You may call the next page. 2-0-9-0-0-4-8 Piotr Zbyszynski v. T.J. Warnke Good morning. May it please the Court? Could I reserve about four minutes for rebuttal, please? We're entirely for that. Okay, thank you. My name is Stacey Hill, and I represent the employer Tuesday morning in this case. And as you know, this case involves a woman who was a retail manager who developed carpal tunnel syndrome and claimed that it was work-related and a repetitive trauma. The arbitrator and the commissioner both found that her job was not repetitive and that her duties did not relate to her condition. And then this matter went before the circuit court. The circuit court found in this case that the arbitrator's findings and the commission's findings were against the manifesto of the evidence. Now, throughout my argument, I do not mean any disrespect to Judge Mullen. I think that she's a good judge and has a very impressive career and is a role model for young women practicing law like myself. But I think that Judge Mullen applied the wrong standard of her view in this case. I don't think that she applied the manifest weight of the evidence. Why do you reach that conclusion? Well, the manifest weight of the evidence is evidence that is clearly evident. It's plain. It's indisputable. A case is against the manifest weight of the evidence if no rational trier of fact could have agreed with the commission's decision. In this case, all of the commission's and the arbitrator's findings are supported by credible evidence. What the circuit court is not supposed to do in reviewing these types of cases is substitute their judgment for the commission's judgment. The circuit court is not supposed to judge the credibility of witnesses, especially medical witnesses. The circuit court is not to discard permissible inferences that are made by the commission and replace it with their own. As I said, what the circuit court is supposed to do is look at the commission's findings and determine whether those findings were supported by credible evidence. Even if that judge disagrees, the arbitrator and the commission both supported their findings by credible evidence. They both agreed that her job was not repetitive. There was much evidence throughout the record to support this. First, she was a manager. The physical tasks that she performed, there were a myriad of tasks. She had significant recovery time between these physical tasks. For example, yes, she did unload a truck with a team of people, but she did this only once a week. She testified that many of her duties were managerial. She admitted that she was responsible for the payroll. She was responsible for making the employees' schedules. She was responsible for the store expenses. She had to match the cash register to the sales slips. She did daily bank deposits. She dealt with the customer complaints, and that's just to name a few. I think about how much time I personally spend balancing my own checkbook, and that certainly takes me more than an hour. And I can't imagine, if you are running a store, that you could do this in less than an hour a day. Now, your opponent may try and hang the hat on Dr. DeLeon, who I believe opined that the claimant's conditions of ill-being were exacerbated by her work activities. What is your response to that opinion? Well, one, I disagree with that statement. I think that Dr. DeLeon admitted in his deposition that his initial causation opinion was based on her statement that she spent 10 hours a day at a cash register. Then during his deposition, he found out more about her job duties, and throughout her treatment, he found out more. And during his deposition, he said the only thing that she did that could have contributed to her condition was unloading the truck. And he also admitted that he didn't know how often she unloaded a truck. He didn't know how many boxes she unloaded, how much they weighed. He didn't know anything except for she unloaded a truck. But regardless, Dr. Papierski goes into great explanation as to what types of physical activities could contribute to carpal tunnel syndrome. And he supports his opinion that her duties were not related, and in fact, her condition was idiopathic. But regardless of the findings, there were two doctors, and the commission adopted the decision or the opinions of Dr. Papierski, and it is solely within the province of the commission to determine the credibility of witnesses, and particularly the credibility of medical witnesses. Judge Mullen applied the wrong standard of review. She took the following facts and incorrectly substituted her findings to support that the case was against the manifest way of the evidence. She said that Petitioner testified that 85% of her time was doing physical tasks, and therefore, her job was repetitive. She substituted her judgment there, because there was evidence in the report and in the record to support the commission's finding and the arbitrator's finding that her job actually was not that physical in nature. They had the testimony of Marian Schmidt, the general manager, who said that at least 60 to 70% of her time was spent doing managerial functions. They had the job description, which explains all the managerial duties that she was in charge of. And they also had her job title, all to support that her job was mainly managerial in nature. And the evidence was, again, that she unloaded the truck about once a week? Was that the evidence? I think in the transcript at one point she says that she unloaded the truck once a week, and she said sometimes it could be twice every 10 days. How long did it take her to unload the truck? Was there any evidence as to how long this took, the nature of what she was lifting, the weight, anything like that? There is nothing in the record that says how long it took to unload the truck, but she did say that she worked with a team, and her job in unloading the truck as it came down a conveyor was to catch the boxes and scan them. She said that there could be anywhere between 300 and 700 boxes, and that the items that were in the boxes really greatly varied anywhere from candy bars to blown glass statues that you put around your house. So other than that, there's no details. And they took the boxes off and they unloaded them. But the fact of the matter is that she only did this at the most once every five days. Well, here, we've got her regional manager, this Schmidt lady, contradicting the claimant as to the amount of time she spent doing non-managerial or supervisory functions. We've got an opinion from Dr. DeLeon, which the arbitrator in the commission found was based on a misunderstanding of the actual work that she did, because she told him she was doing non-managerial work 10 hours a day, five days a week. And the arbitrator found Dr. DeLeon's causation opinions unreliable and unpersuasive because of that. Now, the question becomes, what did the circuit court do? The circuit court seemed to acknowledge that the manager admitted that the store, the regional manager admitted that she would have spent 50% of her time shocking shelves, and therefore evidently comes to the conclusion that causal connection was established. Now, is she making a different credibility finding than the commission made? Certainly. As to DeLeon's testimony? Certainly. She is determining which medical witness is more credible in this case. And that is something that is solely within the province of the commission. In addition, Ms. Mary Ann Schmidt, the general manager, actually testified that 60 to 70% of her time, at least 60 to 70% of her time, was managerial. And she said sometimes, sometimes 40 to 50% of her time would be spent doing physical tasks. What about if, on the line, the truck aggravated a preexisting condition? Would that be compensable? That's different circumstances. But if she had proved at arbitration or at the commission level, then yes, it would have been compensable. But that's not the case that we have here. She's alleging a repetitive trauma. And the commission and the arbitrator both found that she didn't prove that her job was repetitive. This case is very similar to William's case, where that gentleman was a repairman at a millwright. And he testified as to all of his job duties, and really his job was very physical. I think it was much more physical than her job, even if we presume that 85% of her time was spent stocking shelves. He said that he spent two to three hours a day using sledgehammers that ranged anywhere from 8 to 16 pounds. He used various tools in doing his repairs, and some of them would range up to 20 pounds. And much of his time required him to be in small spaces, so two to three hours a day he spent on his back or on his stomach, crawling into spaces that were in between one and four feet big, and he was six feet tall. So his job was very physical, but the commission found that he failed to prove that he did the same repetitive task on a daily basis. And in that case, like the case at hand, there is a coworker who came in and testified, no, I think that he really exaggerated the physical aspect of his job, just like Mary Ann Schmidt did in this case, and said, really, 67, 60 to 70% of her time is actually managerial. And in both cases, the commission adopted, you know, or found that the coworkers, their word was more credible in that regard. In both of the cases, there were conflicting medical opinions. And in both cases, the commission found that their job was not repetitive and not causally related. And the commission's finding in that regard should not be overturned unless it's against the manifest weight of the evidence, unless it is clearly apparent that the commission based their decision on no competent evidence. I think what really supports that Judge Mullen applied the wrong standard of review in this case is how she goes in to explain how she agrees with the dissenting Commissioner Mallee-Mason's opinion. That's great, but the significant difference between Judge Mullen and Commissioner Mallee-Mason is that the commissioner was allowed to view the evidence. As if the trier of fact. She was allowed to determine the credibility of evidence and the witnesses, and she was supposed to. Judge Mullen was not supposed to substitute her judgment for that of the commission's. Of the 16 cases cited by the employer and the claimant in this case, 14 applied the manifest weight of the evidence standard. In all 14 of those cases, the commission's factual findings were affirmed because they were supported by competent evidence. The employer asks that this honorable court respectfully confirm the decision of the commission. Thank you, counsel. Counsel, please. Good morning, Your Honors. My name is Peter Schlax on behalf of Carolyn Zabinski. Do you have any observation about her last statement about all those cases? I do. And what those cases illustrate to me is something I've known for a long time. The petitioner in this case indeed does have a difficult burden to meet in convincing Your Honors that the commission decision was against the manifest weight of the evidence. But to convince you of that, I'd like, if I may, to highlight what I think are two material facts in this case that drive a decision and that are, in fact, indisputable, if not agreed to. And the first fact is the principle of medical causation that is at issue here. And Dr. Popersky, the respondent's examining physician, was asked very directly, what is the contribution between repetitive work-type activities and carpal tunnel, if anything? And he identified three things, forceful gripping, extensive flexion and extension of the hand and wrist, and number three, frequency. The more you've got those three elements, the more the job demands involve forceful gripping, forceful flexion and extension, and more frequency of those activities, the more likely there is a contributing factor between those activities and the development of carpal tunnel. That's his stated medical principle. And I suggest to you that that's a medical principle that's become well-known to all Your Honors because it's common in all these cases. So you're not troubled by his analysis? You're not troubled by the factors that he uses? I don't. Although he obviously, admittedly, using the correct, well-accepted factors, comes to the conclusion that the claimant's problems, the cause of the carpal tunnel is idiopathic. It was not work-related. Correct. And in my cross-examination of Dr. Popersky, I posed the awkward hypothetical. Well, if your understanding of her actual job activities was inaccurate, if, in fact, her job activities did require more forceful gripping, did require more forceful use, would your opinion change? And his answer is, agreed, not yes. It's, well, I'd have to reconsider. Well, it's a parsed answer, but it's, in effect, yes, because it follows from his very stated definition of what the contributing causes are. Well, Popersky was aware of, as I'm reading this, that he knew that the claimant, and he considered the fact that she did handle truck deliveries, she did work at the cash register. It would appear, arguably, unlike de Leon, Popersky had a pretty good knowledge of what, in fact, the claimant's work duties were. And I think, in fact, Popersky, to the extent he admits to it, he does have a better knowledge of what the petitioner's actual activities were than de Leon did, at least when she first went to de Leon, because de Leon's initial records, they talk about keyboard use. Cash register. He had it wrong the first time. He did have it wrong. And the other thing that's made clear in these records, the physicians kind of fall on a continuum. De Leon is obviously more towards the liberal end where, hey, even keyboard use alone can cause this. Popersky's more on the conservative end. No, it requires forceful gripping, flexing, so on and so forth. It doesn't surprise you, does it? Doesn't. Okay. But Popersky, he may have that understanding, but he doesn't admit to it. Because if you look at his report, and when he's addressing the specific question of what's the causal relationship, what does he say? He says, reference was made by the patient to working with unloading vehicle. However, boxes come down to the conveyor belt don't have to be carried and lifted. Registered and keyboard use is also described, but not to be shown to be associated. That's it. That's his, that's what he describes anyway as the petitioner's work activities. But all of this stuff goes to the weight of these opinions. It doesn't go to their admissibility. No one moved to bar his opinions because they were, you know, based on consultation of the entrails of chickens or something on that order. I agree, but the way it is. So it's all weight. It is. But the way this reads is as if this gift store and the items that are for sale there, somehow the petitioner watches them roll down the conveyor belt and they magically appear on the shelves. And all she's doing is watching them come down and otherwise punching a keyboard. And that's most assuredly not the case. Because the other indisputed material fact I suggest to you is that even taking the respondent's witness, the regional manager, she says 40 to 50 percent of her day she's stocking shelves. That's number one. Number two, you have the employer's own written job description, which describes as major and critical duties, reaching, pulling, grasping, stocking the shelves. That's at least half of her job. At least half of her job. And that's indisputed, I think. What I don't understand about that, you know, Mason writes a dissent. That's not surprising. And she makes a comment. She says that there's enough evidence in this record to support an award. Well, of course there is. If you believe the opinion as opposed to Popersky's. And nobody suggests in these workers' conflict cases there's only one right answer. The question is, is the answer that was arrived at by the commission against the manifest weight of the evidence, meaning that there's no evidence in the record that supports it. And Popersky's opinion supports it. Unless you can knock that opinion out, then there is evidence in the record to support the commission's decision. There's evidence in the record to support Mason's dissent. What I suggest to you, Popersky's defined medical principle and the indisputed, and applying the indisputed evidence as to the amount of physical manipulation she does, when you apply that to his principle, his conclusion is against the manifest weight, has to be discarded. So there's indisputable evidence as to her job description, what she did? I suggest it's indisputable that at least 50% of her day is spent either unloading the trucks, stocking the shelves, re-carrying the product, repackaging the product, wrapping the product. Even if you assume that job description. Let's assume you're correct about that. Popersky said it was idiopathic, didn't he? He did. To put it in succinct terms, if I can, you've got Popersky saying he reviewed the employee's description, reviewed everything, it's idiopathic. You've got De Leon, who you could ostensibly hang your head on, is acknowledging that he had a wrong description of the claimant's duties. He said he thought the claimant worked 10 hours a day in a register. Well, that turned out to be inaccurate. So in knowing that you have the burden of proving a compensable claim, you've got Popersky here supporting the employer, you've got De Leon, who arguably gives an opinion to support you that he acknowledged was based on erroneous information, how does the claimant sustain the burden? Because I think at the end of the day, Popersky's opinions do support. His opinions as to causation and what causes carpal tunnel supports the petitioner's position. Because he says forceful gripping, repetitive flexion and extension of the wrist, and the frequency of those tasks causes carpal tunnel, and that's what we have here. He says, I've considered all of that, and in my professional opinion, knowing this, I believe it's idiopathic. How do you ignore his conclusion and focus on his analysis? Because it's as if he's saying, I can see the globe of the earth in front of me, but my conclusion is it's flat. I think that's in effect what he does. He ignores his own. Is Popersky's opinion even necessary to the arbitrator's decision? Because the arbitrator found that because De Leon lacked an adequate understanding of the petitioner's actual job duties, his opinions were unreliable and unpersuasive. So if you knock out De Leon's causation opinion, that leaves you with no causation opinion, and the next paragraph is the arbitrator says, you didn't meet your burden. So now the question becomes, is it really Popersky's opinion that tips the scale, or is it the failure of the petitioner to come forward with an acceptable opinion? I think Popersky's opinion does tip the scale, number one. Number two, I think the arbitrator, he focused solely on the initial treatment note of Dr. De Leon. He did not appreciate Dr. De Leon's deposition testimony where he was shown the job description and essentially says all the more reason I conclude this is a work-related or partially work-related carpal tunnel case because her job is even more physical than I appreciated at first glance. But I do agree. I think Popersky's opinion tips the scale. The arbitrator never found that he found Popersky's opinion to be more credible than De Leon's. He never indicated that he relied on Popersky's opinion in arriving at his decision. He only finds that he outlines what Popersky's opinion is. He certainly says in his opinion what it is, never talks about having relied on it, and then turns around and says De Leon's opinion is unreliable, it's unpersuasive, and therefore you didn't meet your burden. And is there a difference between Popersky is right and it has no relation to your job and saying you didn't meet your burden to establish that it was? They're two different concepts. It is. But I suggest that the what Popersky says carries the burden. When he says forceful gripping, when he says repetitive flexion extension, if you've got that, if the job requires that, then you've got carpal tunnel. Let's break that down because I'm really struggling with this. Popersky is called, he describes three main factors to consider in determining whether a person's job activity is to contribute to the development of the carpal tunnel syndrome. He says, one, the forcefulness of the grip activity required. And you're there saying yes, that's correct, doctor. Two, position of the hand or wrist while performing the work activity. You're saying yes, doctor, your analysis is right on. Three, the frequency of the work activity. You're saying, doctor, you're a genius. You have all the factors. And your professional medical opinion, what is the cause of injury? He says it's idiopathic. You throw your hands up and say, doctor, you don't know what you're talking about? How does that help you? How are you separating his opinion from the analysis? You need to answer that. Well, I asked him. I said, if the job meets those three factors, does your opinion change? And he says, I have to reconsider it. He doesn't say, counsel, you're right, I concede the point. But there's more than one way to say it. And I don't know that he has to say it because the conclusion follows from his definition of what causes this problem. Your time is up. Thank you. Just a moment, please. Nothing that counsel brought up before you today is anything that's different, that wasn't argued before the commission, that wasn't considered by the commission in their finding that her job was, one, not repetitive, and, two, not causally related. And, interestingly, his argument focused on the causation. But in addition to causation and before causation, we need to prove that the job is repetitive. What is your response to his argument that Dr. Perpersky's analysis confirms and helps the claimant? I honestly don't understand that argument. I think that Dr. Perpersky's opinions and analysis support that her condition was not related to her job duties. He said that there are three factors to take into consideration when deciding whether a condition is repetitive so that it would contribute to carpal tunnel. The first is gripping, and particularly a pinching-type motion. It's also the extension and flexion, particularly at the very end ranges of the range of motion, and the frequency of the activity. And here, the grip and the extension, it varies. It's different items of different weights. And she didn't testify anywhere that she used a pinch-type grip, or even where her wrist was when she was carrying these products. But most importantly was the frequency. She had significant time to rest between these tasks. What I understand is you're arguing those cases as if the commission found that her injuries were not related to her employment. The commission never found that. That's not what the commission found. What the commission found is she didn't prove that it was. And there's two different things. You argue this as if the commission turned around and said, Perpersky's right. It's idiopathic. It was not caused by her job. The commission said she didn't meet her burden of proof of establishing that her injury arose out of in the course of her employment. She didn't meet her burden of proof. The commission said she didn't meet her burden of proof of establishing that her injury arose out of in the course of her employment. And the commission said she didn't meet her burden of proof of establishing that her injury arose out of in the course of her employment. So the evidence doesn't mean that it didn't happen.  Okay. You are correct. It couldn't be clearer. You take the last four paragraphs and he tells you exactly what he did. That's correct. But it is solely within the province of the commission to determine whether or not Dr. DeLeon's testimony is credible. No question it is. No question it is. So why are we arguing that the evidence establishes that her job duties did not cause her injury, as opposed to talking about there is no – it wasn't against the manifest weight to establish – to find that she didn't prove that it was. Well, I guess I was providing you with the evidence that the commission relied on in their decision, the competent evidence. And since there is competent evidence to support their findings, their findings are not against the manifest weight of the evidence. In the Glister Court, a similar situation occurred wherein the circuit court overturned the commission's findings and the held court admonished the circuit court in substituting their judgment for the commission's. And this case is very similar in that the facts are clear. It's – the commission based their opinions on competent evidence that was in the record and it was not against the manifest weight of the evidence. Thank you, counsel. Thank you. The court will take the matter under advisement for disposition. We'll stand at recess.